# IN RE CARPENTER.

PATENTS; MULTIPLICITY OF CLAIMS; ANTICIPATION.

1. Where an invention can be clearly defined by means of four claims the presentation of twelve claims is objectionable because unnecessarily multiplied.
2. On an appeal from a decision of the Commissioner of Patents rejecting an application for patent, it was *held* that the claims in the application relating to the manufacture of electric heaters and rheostats, and embracing an improvement in the method of attaching electrical conductors to, and insulating them from, metallic bodies, were anticipated by the state of the art and by prior patents cited, including those of the applicant.

No. 251.   Patent Appeals.   Submitted May 11, 1904.   Decided June 8, 1904.

HEARING on an appeal by the applicant from a decision of the Commissioner of Patents rejecting an application for patent.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Wallace Greene* and *Mr. Robert N. Kenyon* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal by Charles E. Carpenter from the decision of the Commissioner of Patents rejecting an application for a patent.

The invention relates to the manufacture of electric heaters and rheostats, and the claims embrace an improvement in the methods of attaching electrical conductors to, and insulating them from, metallic bodies.

The application was filed February 14, 1891, since which date the specifications have undergone frequent amendment.

The nature and effect of these amendments as introducing matter entirely new, have been pointed out and discussed in the decisions of the Patent Office tribunals.

The claims, as said by the Examiners-in-Chief, have been unnecessarily multiplied, and during the pendency of the application have grown from two to twelve. We agree with them and the Commissioner, also, that the statement of claims 1, 5, 7, and 10 are sufficient for the purposes of the case.

These read as follows:

"1. The herein-described method of combining an electrical conductor which is to be treated by an electric current in the operation of the device, with and insulating the same from a support to which the heat must pass from the conductor, the same consisting in first applying to the support a thin coating of an insulating vitreous material in the form of a powder, then heating the material until it forms a tough coherent layer adherent to the support, then allowing it to cool, then placing the conductor upon said coating, then covering the conductor with a second coating of an insulating vitreous material in the form of a powder, then subjecting the article to sufficient heat to cause the material of this second coat to cohere and form a tough layer of insulating material protecting and insulating the conductor and attaching it firmly to the support."

"5. The method of making electric heaters or rheostats, which consists in providing the conductor to be heated with a terminal lead of larger current capacity, uniting the metallic plate or sup-

port to the conductor and its terminal lead by one or more coats of insulating. vitreous material applied in the form of a powder and melted and cooled, the vitreous material being made to cover the lower part of the terminal lead, and the other part of the conductor including the joint between them, whereby a layer of tough, coherent vitreous material is formed covering the conductor except the upper part of its terminal lead, and attaching the conductor with its terminal lead firmly to the support."

"7. In an electric heater or rheostat, the combination of a supporting plate, a layer of tough, coherent, insulating, vitreous material adherent to the plate and free from lines of stress, a conductor adapted to be heated embedded in said layer and attached thereto to the plate."

"10. In an electric heater or rheostat, the combination of a supporting plate, a layer of tough, coherent, insulating, vitreous material adherent to the plate and free from lines of stress, a conductor adapted to be heated and provided with a terminal lead of larger current capacity, the terminal lead being partly embedded in said layer, and the other part of the conductor, and the joint between the parts being covered by said layer, whereby the conductor with its terminal lead is attached to the plate and is held in place and protected against injury or depreciation."

The general claims have been framed to embrace both the process and the article of the combination. These contain two distinctive features on which the contention of invention is founded.

The first of these is the method described in claim 1, by which the fine wires of the electrical conductor are securely and hermetically sealed between two coats of an insulating, vitreous material, one of which is made to adhere to the metallic plate, and the other to the first coat: the result is the article of the combination described in claim 7. The second is the process described in claim 5, by which a terminal lead of greater current capacity is attached to the plate by means of the coat of vitreous material, and the joint connecting it with the conductor is embedded in the same manner that the conductor has been; the result is the article of the general combination of claim 10.

A number of patents were referred to in the course of the consideration of the application, to show the want of patentable novelty in these claims. Among those specially relied upon in the decisions were No. 457,828 and No. 490,034, granted to T. E. Morford on August 18, 1891, and January 17, 1893, respectively; and Nos. 447,023 and 481,781, granted to this applicant on February 24, 1891, and August 30, 1892, respectively.

The decisions of the tribunals of the Patent Office contain an exhaustive discussion of all the points relevant in the ascertainment of the applicant's right to a patent, and agree in the denial of the same.

Concurring in the views expressed in those decisions, and in the necessary conclusion therefrom, we deem it unnecessary to do more than refer to them and state briefly the grounds of our concurrence.

Omitting the question of the nature and effect of the amend-ments of the application, made from time to time, we entirely agree in the conclusion of the Commissioner, that such claims and parts of claims as relate to embedding the electrical conductor in the enamel attached to the plate have been anticipated by Morford in the patents referred to above. In the specifications of these, he describes the process of inclosing and sealing the small wires of the conductor between two coats of enamel, which, by a heating process, are made to adhere to each other and to the plate.

The process of enameling was old and well known, and Morford confined himself to no particular method of application. There is nothing novel in the process described by the applicant.

To secure the advantages of this process of construction, it is obvious that the layers of enamel should be of, practically, uniform thickness, and composed of, substantially, identical material, in order to prevent the cracking and breaking that would ordinarily result under different conditions. This is what is meant in describing—"a layer of tough, coherent, insulating, vitreous material adherent to the plate and free from lines of stress."

In view of the state of the art, and the specifications, drawings, and claims of the applicant's own patents, before referred to, we entirely agree with the Commissioner in denying the second feature of invention, founded on the description of the terminal leads of larger current capacity, the joints connecting which with the fine wire of the conductors are to be incased in the same bed of enamel.

The decision will be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents.

*Affirmed.*